THE STATE, THOMAS H. STEWART, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN.

1. By the provisions of the statutes (*Pamph. L.* 1888, *p.* 491, and *Pamph. L.* 1889, *p.* 378), an assessment for damages for a change of a street grade may be made in any city having power to change such grade, by those officers who, under the city charter, make assessments for benefits arising from municipal improvements; and Hoboken is one of those cities.

2. When the change of grade is itself an improvement for which benefits may be assessed, or is a part of or an incident of such an improvement, the assessment for damages should be made at the same time and as a part of the assessment for benefits.

3. The provisions in the charters of the respective cities respecting the notices which shall be given of the making or confirmation of an assessment for benefits, applies also to that portion of the assessment which is for damages.

4. When the commissioners fail to report any damages in favor of an abutting landowner, but their report shows that the question of damages was passed upon, *certiorari* is an appropriate writ to review the proceeding.

5. When such owner knew, while the improvement was in progress, that the street grade was to be raised, and knew of the assessment shortly after it was made, yet waited for nearly two years before applying for his writ, it is such delay as, under the circumstances, should lead to dismissal of the writ.

On *certiorari* bringing up an assessment for benefits and damages resulting from the building of a sewer and other improvements in Monroe street, in the city of Hoboken.

On March 27th, 1890, an ordinance was passed by the common council of Hoboken providing, in section 1, that a brick sewer be constructed in Monroe street, from the southerly line of Fourth street to the centre of First street, and also that Monroe street be graded in accordance with the established grade, the curbs reset and flags relaid, and new curbs set and new flags laid, where necessary, and the roadway be repaved with Belgian block pavement. Section 2 provided for an assessment for benefits.

On September 30th, 1891, the commissioners of assessment of the said city made their report of the expense of the work done, amounting to $19,753.82. Of this amount, $16,559.28 was assessed upon land peculiarly benefited, and the remainder, $3,048.54, was assessed upon the city. They also report that they have considered the question of damages and find that two persons have been damaged to the amounts set down. No award of damages was made to the prosecutor of this writ.

Upon the presentation of this report, the clerk was directed by the common council to advertise for objections, according to law. This notice was published in one of the papers published in said city for twenty days previous to October 28th, 1891. It notified the public that on that date objections would be heard.

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the prosecutor, *J. C. & S. A. Besson.*

For the defendant, *James F. Minturn.*

The opinion of the court was delivered by

REED, J.   The prosecutor is the owner of four houses, in front of which houses this street improvement was made.   It appears in the testimony that the agents of the city, in executing this work, raised the surface of the street in front of these houses so that the improved street was from three and one-half to five feet higher than its previous surface.

The prosecutor claims that the value of his houses was greatly depreciated by this result.  He also insists that it was the duty of the commissioners to award him compensation for his injury.

Let us first inquire upon what statutes the power of the commissioners to make such an assessment rests.   In *Vorrath v. Hoboken*, 20 *Vroom* 285, it was held that the commissioners in that city had no power to assess damages for the alteration of street grades.   The remedy then was by action at law under section 70 of the Road act.   *Rev., p.* 1009.

By an act passed in 1888 (*Pamph. L., p.* 471), it is enacted that it shall and may be lawful hereafter for the commissioners of assessment in cities having to assess for benefits by reason of street improvements, but without power to assess damages therefor, to include in their report such damages as they may consider the property on the line of said improvement to have suffered.

The second section of this act provided that if the commissioners failed to make such assessment for damages, the owners should have the same rights as if the commissioners had no power to make assessments.

In 1889 (*Pamph. L., p.* 378), an act was passed which provided that where any city has power to change the grade of

any street or part of a street upon which any house or other building stands or is erected, it shall be lawful for the municipal authorities in such city, through its proper officers, to make or cause to be made the proper award of damages, if any, ensuing or arising to the owner or owners of any such house or other building standing and erected upon any such street or part of a street the grade whereof is changed as aforesaid. Under the first of these acts, the commissioners are empowered, and in the second practically enjoined, to assess for damages resulting from a change of grade in Hoboken. This city has, by section 56 of its charter, a power to grade, and this carries with it the incidental power to establish grades (*State, Hart* v. *West Orange*, 11 *Vroom* 122), and therefore to change grades. This brings it within the class of cities mentioned in the act of 1889, and street grading is also included in the term "street improvement," used in the act of 1888.

The ability of these commissioners to make a legal assessment for damages resulting from an alteration in grade, is therefore quite apparent.

It is quite clear that, under these statutes, where the change of grade is an incident or part of a street improvement, the assessment of damages should be made at the same time as the assessment for benefits and as an adjunct thereof. It is also evident that the commissioners, on this occasion, made such an assessment.

Their report shows that they passed upon the question of damages to the owners of property, and they embodied the result of their judgment in an award to two of such owners, and in finding that none other than these were injured. Indeed, it is upon the assumption that such an assessment was made that the propriety of the present method of review rests, for if no assessment at all for damages was made, then *mandamus*, and not *certiorari*, would be the appropriate writ to compel the performance of this neglected official duty.

The ground of complaint is that the assessment was, in respect to the prosecutor, illegally made.

·It is, in the first place, contended that the prosecutor received no notice of the making or confirmation of the assessment, and was deprived of his right to be heard in. respect to it. If this be true, it follows, as a matter of course, that the assessment cannot stand.

The testimony respecting personal notice to the prosecutor, or to his agents authorized to act in the matter for him, is not clear. While it is of such a character as to lead to a strong probability that such notice must have been sent and received, yet, in view of the loose method, .or the want of method, of the city officers in preserving the evidence of such notification, and, in view of the emphatic ·denial of prosecutor and his agents that such notice was received, we ·cannot say that such ·personal notice was proved.

But notice was given by publication. As already observed, a notice was published in a Hoboken newspaper for twenty days previous to October 28th, 1891, that the report had been filed and that on the evening of that day, objections tc this assessment would be heard and considered.

. The charter of Hoboken (*Pamph. L.* 1855, *p.* 475, § 52), provides that after the assessment for benefits for opening, grading or paving, &c., of a street shall have been filed in the office of the city clerk, the clerk shall cause to be inserted in one of the newspapers published in said city, for at least ten days, a notice of the filing of said report, and that the council will meet at a time and place, to be specified in said notice, to consider said assessment, and receive and consider all objections thereto.

Now, as has been already remarked, the act (*Pamph. L.* 1888, *p.* 471) which provides in its first section that the assessment for damages shall be included in the report of the assessment for benefits by reason of street improvements, taken together with the act (*Pamph. L.* 1889, *p.* 378) which provides that the proper municipal officers shall make the assessment for damages in case of a change of grade, shows that the assessments are to be made as a single proceeding.

In instances like the one now in hand the assessment for damages is a concomitant of the assessment for benefits.

It follows that the course of procedure enjoined by the charters of the several municipalities in making the latter assessment, must attend the making of the assessment which is extended, by the statutes mentioned, to damages as well as benefits.

Now the published notice was the notification required by the charter of the city of Hoboken. Unless the notification prescribed by the legislature contravenes some fundamental right of the prosecutor, he has no ground of complaint. But there does not seem to be the least support for such a notion. That a notice by publication of the kind enjoined in the charter of Hoboken is sufficient, has been so repeatedly held that no citation of authorities would be now of use. Nor need the notice be for a hearing before the commissioners who made the assessment, as well as before the common council who affirmed it. *Wilson* v. *Karle,* 13 *Vroom* 612.

The notice was sufficient.

The main attack, however, is that the injury resulting to the property of the prosecutor is so palpable that the report should be set aside.

In respect to the testimony taken to show the amount of injury, I am quite clear that a large part of the money spent in repairing the houses, in repapering them and in filling in, is not the necessary result of the alteration of the grade.

Nevertheless it would seem difficult to escape from the conclusion that the expense of actually lifting the houses into their new positions, as well as some expense for plumbing and for filling in, were the necessary consequences of the change.

But while the testimony leads us to think that some award should have been made to the prosecutor, yet we think that to vacate and send this assessment back at this late day would work more injustice to the municipality than the assessment as it stands inflicts upon the prosecutor.

Under the act of 1889 the amount awarded as damages is to be assessed upon the property benefited by the improvement.

For this, as other reasons, it is important to cities and to property-owners that the amounts of such assessments should be finally fixed at as early a day as is practicable. The legislature recognized that there should be no marked delay in asserting a right to damages caused by changes of grades, for in section 70 of the Road act the right to bring an action for such damages is limited to a period of twelve months.

The duty of assessing for such damages was substituted for the action at law by the act of 1889.

In the present case the report of the commissioners was confirmed December 3d, 1891. The testimony shows that the prosecutor was informed, while the improvement was in course of execution, that the grade of the street was to be raised. He says that he saw the work progressing, and that the foreman told him that they were running a sewer through the street, and that they were also going to raise the grade. He seems to have paid no further attention to the matter. He made no arrangements to be informed, either directly or through his local agents, of the progress and completion of the work, or of the assessment.

After he received the bills for the amount of his assessment for benefits, he says, late in 1891 or early in 1892, he saw the houses and perceived the injury which had resulted from the raised grade. Yet it was not until November 3d, 1893, that he sued out his writ of *certiorari*.

For this reason I think the writ should be dismissed.